**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | | |
|---|---|---|
| **TERRANCE D. THOMPSON** | * | **CIVIL ACTION NO. 08-0252** |
| **VERSUS** | * | **JUDGE JAMES** |
| **BURL CAIN, WARDEN** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

Petition for *Habeas Corpus* pursuant to 28 U.S.C. §2254 [Doc. #1] filed on February 19, 2008,

by *pro se* petitioner Terrance D. Thompson ("Thompson").  Petitioner is an inmate in the custody

of Louisiana's Department of Public Safety and Corrections.  He is incarcerated at the Louisiana

State Penitentiary, Angola, Louisiana where he is serving a 49 1/2-year sentence imposed

following his conviction for armed robbery in the Fourth Judicial District Court, Ouachita Parish.

For the reasons stated below, it is recommended that the petition be **DENIED**.

## STATEMENT OF THE CASE

Thompson was charged by bill of information with two counts of armed robbery[1] in

violation of La. R.S. 14:64 and 14:64.3 and one count of a crime of violence against a person

over the age of 65 in violation of La. R.S. 14:50.2.  [Rec. p. 35, 70].  On June 23, 2004,

Thompson was convicted by a jury of one count of armed robbery of Paul Guidry; as the jury was

unable to reach a verdict as to the other two counts, a mistrial was declared.  [Rec. p. 86-88].

---

[1] Guidry was charged with the armed robbery of Shirley Johnson and Paul Guidry.

After adjudging Thompson a second felony offender, the trial court sentenced him to 491/2 years hard labor, with the first ten years to be served without the benefit of parole, probation, or suspension of sentence.

On October 6, 2005, Thompson's appellate counsel filed an *Anders* brief in the Louisiana Second Circuit Court of Appeal on the ground that he saw no non-frivolous issues for appeal and therefore desired to withdraw from the case. On March 8, 2006, the appellate court found that there were no non-frivolous issues for review and affirmed the conviction; however, on review for error patent, the court determined that Thompson's sentence was illegally lenient because it did not require that he serve the entire sentence without the benefit of parole, probation, or suspension of sentence. [Rec. p. 519-21]. Therefore, the court re-sentenced him to 491/2 years without the benefit of parole, probation, or suspension. [Rec. p. 521].

On July 27, 2006, Thompson filed a motion for post-conviction relief arguing the following grounds for relief: (1) the testimony of Officer Mark Huggins regarding an anonymous caller's identification of Thompson was inadmissible hearsay and its admission constituted a Confrontation Clause violation; (2) his counsel rendered ineffective assistance in failing to object to the suggestive identification of Thompson by Paul Guidry; failing to object to the above-referenced testimony of Officer Huggins; and failing to object to the bill of information as it pertained to Paul Guidry on the ground that it failed to set forth a crucial element of the offense of armed robbery. [Rec. p. 531]. The trial court denied Thompson's motion on August 4, 2006, stating as follows:

The Application makes one claim: That his trial counsel was ineffective. In

that connection he alleged that his counsel's allegedly deficient performance creates a reasonable probability that the outcome would have been different. Finally, he claims the identification evidence was insufficient to sustain his conviction.

The "canned" memorandum filed in support of the Application fails to establish specific grounds for relief. On page 3 of the memorandum the applicant lists some of issues and follows up with discussion. The Court does not find the applicant's arguments to be persuasive. As trial judge, the Court took all appropriate steps to insure that defendant received a fair trial.

One part of the applicant's argument is that the Amended Bill of Information was defective, arguing that the Bill "fails to set forth a crucial element of the offense charged". Specifically, he argues that Count 3, charging him with armed robbery of Paul Guidry failed to state what item was allegedly taken from Mr. Guidry. He cites no legal authority for the claim that the form of the charge violated his right to notice of the charge.

The Court finds that the Application has no legal merit. Therefore, it is **denied**.

[Rec. p. 547] (citation omitted). Thompson appealed the denial of the motion for post-conviction relief to the Louisiana Second Circuit of Appeals, which denied writs, stating as follows:

A review of the writ record supports the trial court's denial of the applicant's many claims, including those of ineffective assistance of counsel. The applicant has failed to prove that his counsel committed any unprofessional errors, or to demonstrate a reasonable probability or that, but for defense counsel's alleged unprofessional errors, the result of the proceedings would have been different. The applicant has thus failed to meet his burden of proving that post-conviction relief should have been granted. The writ is therefore denied.

[Rec. p. 571] (citations omitted). The Louisiana Supreme Court denied supervisory writs on August 31, 2007, without explanation. [Rec. p. 592]. In the instant petition, Thompson argues the identical grounds for relief argued in his motion for post-conviction relief in the state courts.

## LAW AND ANALYSIS

### Standard of Review

*Habeas corpus* relief is available to a person who is in custody "in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  The standard of review

is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim ---
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

This court must give deference to a state court decision for "any claim that was adjudicated on

the merits in State court proceedings" unless the decision was either "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state

court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) citing

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2004).  "The 'contrary

to' requirement 'refers to holdings, as opposed to the dicta, of... [the Supreme Court's] decisions

as of the time of the relevant state-court decision."  *Dowthitt*, 230 F.3d at 740 citing *Williams,*

120 S.Ct. at 1523. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 citing *Williams*, 120 S.Ct. at 1523.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt*, 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. § 2254(d)(2).

## Claim One

Thompson first argues that the trial court erred in allowing Officer Mark Huggins to testify during the trial regarding the substance of an anonymous tip as such testimony was inadmissible hearsay and thus violated Thompson's rights under the Sixth Amendment's Confrontation Clause. "Under the Sixth Amendment, a criminal defendant has the right 'to be confronted with the witnesses against him.'" *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008) (citation omitted). "The Confrontation Clause generally bars witnesses from reporting the out-of-court statements of nontestifying declarants." *Id.* The following testimony is the subject of Thompson's claim:

Q: At some later date, did you receive information that Terrance Thompson may have been involved in these two robberies?

A: Yes, sir I did.

5

Q: And how did you receive that information?

A: I received it from Crime Stoppers Coordinator, Detective, Charles Roark.

> Q: And what information did you receive?
>
> Defense Counsel: Objection, Your Honor, that's going to be hearsay, if he tries to say what Detective Roark told him.
>
> The Court: Objection is hearsay. Why isn't that hearsay Mr. Pham [prosecutor]?
>
> Mr. Pham: Thank you, Your Honor.

Q: That information, did that implicate Terrance Thompson in these two armed robberies?

A: Yes, it did.

Q: And on what date did you receive that information?

A: I believe it was December 31, 2002.

Q: Did that information specifically implicate Terrance Thompson in the Hampton Inn robbery?

A: Yes, sir it did.

Q: Now with that information, did you prepare a photo lineup to?

A: Yes, sir I did.

[Rec. p. 140]. The prosecutor also referred to the Crime Stoppers anonymous tip in his opening argument and on more than one occasion in his closing argument. [Rec. p. 398, 406, 410].

The undersigned notes initially that the trial court did not specifically address this issue

other than to say that the "[trial] Court took all appropriate steps to insure that defendant received a fair trial."  Therefore, it is unclear what, if any, federal law the trial court applied in denying Thompson's motion.  However, the Fifth Circuit has held that in a situation such a this, the court should "(1) [assume] that the state court applied the proper 'clearly established Federal law'; and (2) then [determine] whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law.'"  *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citations omitted); *see also Taylor*, 545 F.3d at 335 ("AEDPA deference is due to state court decisions, even when the state court does not explicitly address the relevant issue.").  This is because "a federal habeas court only reviews the reasonableness of the state court's ultimate decision."  *Id.*  In this case, the appropriate inquiry is whether the trial court "unreasonably applied clearly established federal law as determined by the United States Supreme Court" in denying Thompson's motion for post-conviction relief.  *Taylor*, 545 F.3d at 335.

Rulings regarding the admissibility of evidence under state law are not reviewable in *habeas* proceedings unless the rulings "were so extreme as to result in a denial of a constitutionally fair proceeding."  *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  In this case, the undersigned finds that the admission of Officer Huggins' testimony regarding the Crimestopper's anonymous tip constituted a Confrontation Clause violation and, therefore, that the trial court's failure to so find was an unreasonable application of federal law.  As the Fifth Circuit has stated:

> Police officers cannot, through their trial testimony, refer to the substance of statements given to them by nontestifying witnesses in the course of their investigation, when those statements inculpate the defendant. When the statement

> from an out-of-court witness is offered for its truth, constitutional error can arise. This principle is well established.

*Taylor*, 545 F.3d at 335; *see also State v. Hearold*, 603 So. 2d 731, 737 (La. 1992) ("Law enforcement officers may not testify as to the contents of an informant's tip because such testimony violates the accused's constitutional right to confront and cross-examine his accusers."). Based on this authority, it is apparent that Officer Huggins' testimony was hearsay and that its admission deprived Thompson of his right to confront witnesses against him.

Upon solicitation by the prosecution, Officer Huggins testified as to the substance of an out-of-court statement made by Detective Roark and by the individual who provided the tip. Neither Detective Roark nor the individual who provided the tip testified at the trial, so Thompson was not provided the opportunity to cross-examine them. Moreover, this information substantially incriminated Thompson in the crime for which he was on trial. Therefore, not only was this testimony hearsay, but its admission violated Thompson's rights under the Confrontation clause. The error was then compounded when the prosecutor repeatedly referred to Officer Huggins' testimony regarding the Crime Stoppers tip during his closing argument. *See Taylor*, 545 F.3d at 331 (finding the admission of a police officer's testimony that an unidentified witness informed him who the suspect was, combined with the prosecutor's referral to the testimony in his rebuttal argument, to be violation of the Confrontation Clause); *United States v. Hernandez*, 750 F.2d 1256, 1257-58 (5th Cir. 2008) (finding inadmissible hearsay in DEA agent's testimony that "[w]e received a referral by the U.S. Customs as [defendant] being a drug smuggler").

The State contends that the testimony was not intended to be used to prove the truth of

the matter asserted, but rather to explain the course of Officer Huggins' investigation, presumably in an attempt to argue that testimony was not hearsay. While it is clear that "[t]he Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted," *United States v. Flores*, 286 Fed.Appx. 206, *6 (5th Cir. August 7, 2008) (citation omitted), there is no clear indication from the trial transcript that Officer Huggins' testimony was intended only for that purpose. The prosecutor made no statements indicating that the testimony was only intended to establish the course of Officer Huggins' investigation, and there was no limiting instruction given restricting the jury's the use of the testimony. *See United States v. Gonzales*, 967 U.S. 1032, 1035 (5th Cir. 1992) (finding no Confrontation Clause violation when the information was not offered to prove the truth of the matter asserted as evidenced by repeated limiting instructions and the fact that the prosecution only referred to the testimony in closing for its limited purpose). Moreover, the fact that the prosecutor referred to the testimony in his opening statement and repeatedly in his closing statement belies this assertion. *See Hernandez*, 750 F.2d at 1257 (stating that the prosecutor's referral to the offending testimony after it was elicited, and common sense, indicated that such testimony was intended to prove the truth of the matter asserted).

Therefore, based on the foregoing discussion, the admission of Officer Huggins' testimony constituted a Confrontation Clause violation. This finding, however, does not end the inquiry in this case, for if the error was harmless, Thompson is not entitled to relief. "On habeas review under the AEDPA, the prejudice of constitutional error in a state-court criminal trial is measured by the 'substantial and injurious effect' standard." *Taylor*, 545 F.3d at 336. Under this

standard, the admission of Officer Huggins' testimony will entitle Thompson to relief only if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citation omitted). "When a court finds itself 'in virtual equipoise as to the harmlessness of the error. . ., the court should treat the error as if it affected the verdict." *Id.* (citation omitted). However, if the evidence of the defendant's guilt is overwhelming, reversal is not required. *Id.*

In this case, the undersigned finds that the error of admitting Officer Huggins' testimony was harmless. Notwithstanding his testimony regarding the anonymous tip, Officer Huggins testified that he prepared a photo line-up that included Thompson and showed it to Guidry. Huggins testified that upon viewing the line-up, Guidry "immediately" picked out Thompson and said "That's him." [Rec. p. 141]. Moreover, Guidry testified at trial that he was able to get a good look at the individual who robbed him and then identified Thompson, who was sitting in the courtroom, as the perpetrator. [Rec. p. 128] He stated that he could say without a doubt that Thompson was the individual who robbed him and that he was one-hundred percent certain. [Rec. p. 130]. Officer Huggins testified that Thompson fit the physical description of the perpetrator given by Guidry following the robbery. Guidry also testified that Thompson was carrying a gun and that he took Guidry's wallet and searched through it and that he stole Guidry's cell phone that Townsend, the other individual allegedly robbed with Guidry, was holding. [Rec. p. 126].[2]

Given this evidence, the undersigned cannot say that Officer Huggins' testimony

---

[2] As will be discussed in more detail below, irrespective of the cell phone, the fact that Thompson only had Guidry's wallet in his possession for a short time was sufficient to establish the taking element of armed robbery.

regarding the anonymous tip had a substantial or injurious effect on the jury's verdict. The error in admitting Officer Huggins' testimony regarding the anonymous tip was harmless, and therefore the trial court's denial of Thompson's motion for post-conviction relief on this ground did not constitute an unreasonable application of federal law. Accordingly, Thompson is not entitled to *habeas* relief, and it is recommended that his motion on this ground be DENIED.

## Claim Two

Thompson's second claim asserts three instances of ineffective assistance on the part of his trial counsel. To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90.

*Strickland's* prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) citing *Strickland*, 104 S.Ct. at 2068. A petitioner must affirmatively prove prejudice. *Deville v. Whitley*, 21 F.3d 654, 649 (5th

Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062, 1066 (5th Cir. 1998). Self-serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland*, 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland*, demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson*, 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1043.

*A. Ineffective Assistance of Counsel in Failing to Object to Suggestive Identification*

Thompson first argues that his counsel rendered ineffective assistance in failing to object on the grounds that the pre-trial identification procedure by which Guidry identified him out of a photo line-up was suggestive. He is apparently arguing that Guidry's in-court identification was tainted by the suggestive pre-trial identification and, therefore, was inadmissible. "Out-of-court identification procedures violate a defendant's due process rights if those procedures are (1) unnecessary and suggestive, and (2) unreliable." *Amador v. Quarterman*, 458 F.3d 397, 413 (5th Cir. 397). With regard to the second inquiry, which is only reached if the identification is

12

determined to have been suggestive, the following five factors are to be considered: (1) the witness's opportunity to view the suspect; (2) the witness's degree of attention; (3) the accuracy of the witness's initial description of the suspect; (4) the witness's level of certainty; and (5) the time between the crime and the trial confrontation. *Id.* at 414-15.

"Photo arrays may be suggestive if the suspect is the only person closely resembling the description, or if the subjects of the photographs are 'grossly dissimilar in appearance to the suspect.'" *United States v. Saenz*, 286 Fed.Appx 166, *3 (5th Cir. July 15, 2008) (quoting *United States v. Wade*, 388 U.S. 218, 233 (1967)). Thompson has argued absolutely no facts indicating that the photo line-up procedure was suggestive. Rather, he argues that the identification was suggestive because it rested solely on the description of the perpetrator offered by the anonymous tipster.[3]

Thompson contends that Guidry was unable to identify the perpetrator immediately following the robbery yet was able to do so during the line-up following the anonymous tip. However, the record clearly indicates that Guidry provided the authorities with a physical description following the robbery. According to the offense report, on the day of the robbery Guidry described the perpetrator as a "black male, 5'9" to 6'0" tall, approximately 21 to 27 years of age, 185 to 190 lbs., and had a light beard and mustache, . . . [and was] wearing a blue ski cap and navy blue clothing." [Petitioner's Exhibits]. According to Thompson, nothing in this description suggests that Guidry had any indication of the identity of the person who allegedly

---

[3] At trial, Officer Huggins testified that he not suggest to Guidry who to pick out of the line-up. [Rec. p. 141].

robbed him.  While Thompson apparently contends that Guidry should have been able to identify

Thompson by name prior to the anonymous tip or the line-up, the fact that it was the anonymous

tip that eventually led to Guidry picking Thompson out of the line-up does not indicate that the

line-up was suggestive, nor does the fact that Guidry was unable provide enough information to

enable Thompson to be brought in for the line-up.  Moreover, there is no indication that the

anonymous tip had any effect on Guidry's identification of Thompson other than the fact that it

led to the creation of the line-up.[4]

Thompson further argues that there were inconsistencies in the two descriptions given by

Cory Townsend, the other individual allegedly robbed with Guidry.  For example, Thompson

notes that Townsend was unable to identify the perpetrator in a photo line-up, and that during one

interview he stated that the perpetrator was wearing a dark blue hooded sweatshirt and a dark

---

[4] Thompson refers to the following alleged testimony by Guidry during questioning by the prosecutor during the trial:

> Q:  Mr. Guidry, did you say that the perpetrator, Mr. Thompson, wore a Navy Blue ski mask?
> A:  Yes, sir.
> Q:  Did he have it rolled-up over his head, in his back pocket, over his face, or rolled-up over his head?
> A:  Oh yea!  Rolled-up over his head.

Thompson contends that this testimony is inconsistent with the above-noted description given by Guidry after the robbery in that one refers to a ski cap and one to ski mask rolled up over his head.  However, the trial transcript does not reflect this testimony; perhaps it occurred during the preliminary examination.  In any event, not only are the two accounts not materially inconsistent as it is reasonable to assume that a ski cap or a ski mask rolled up over an individual's head would look similar, but they also do not indicate a suggestive identification, nor does the undersigned find that counsel's failure to argue the purported inconsistency to be objectively unreasonable or prejudicial.

blue ski cap while in another interview he stated that the perpetrator was wearing a dark blue ski mask, dark blue jacket, and dark blue pants. [Petitioner's Exhibits, Doc. #1]. Thompson takes issue with the fact that Townsend did not mention that the perpetrator was wearing dark blue pants or a ski mask in the first interview. However, the undersigned does not find that counsel's failure to point out these inconsistencies or the fact that Townsend could not identify the perpetrator was objectively unreasonable. Moreover, there is not a reasonable probability that the result of the proceeding would have been different had defense counsel done so, especially given Guidry's insistence that Thompson was the perpetrator. Moreover, despite Thompson's contention otherwise, the fact that Townsend could not identify Thompson does not indicate that the line-up was suggestive.

Although Thompson repeatedly refers to the above-mentioned five factors that are to be considered in determining whether an identification is reliable, he has not demonstrated that the photo line-up was suggestive. Therefore, the factors need not be considered; however, out of an abundance of caution, the undersigned has considered these factors and finds that they do not indicate that Guidry's in-court identification was unreliable. Guidry testified that he was able to get a good look at the person who robbed him and that the item that the individual was wearing on his head was in no way covering his face [Rec. p. 127-28]. In addition, Officer Huggins testified that the area in which Guidry was robbed was well-lit. [Rec. p. 139]. As to Guidry's degree of attention, it is reasonable to assume that an individual who is being held at gunpoint would naturally pay close attention to the perpetrator, and there is nothing to indicate that Guidry was distracted or was not paying attention at the time of the robbery. *See United States v. Hixon*,

35 F.3d 559, *4 (5th Cir. 1994) (finding that an individual who was involved in a direct, violent confrontation with the perpetrator would likely have a high degree of attention).   Also, Officer Huggins testified that Thompson fit the description of the perpetrator given by Guidry after the robbery.  [Rec. p. 146].  With regard to Guidry's level of certainty at trial, he explicitly stated he was certain that Thompson was the individual who robbed him.  [Rec. p. 128].  Finally, the robbery occurred on December 12, 2002, and the photo line-up was conducted within weeks on January 6, 2003.  *See Hixon*, 35 F.3d at *4 (finding that a photographic identification that occurred within weeks of the crime was indicative of reliability).   Therefore, the totality of the circumstances surrounding Guidry's identification indicates that it was reliable.

As Thompson has provided no support for his assertion that Guidry's pre-trial identification was suggestive or that Guidry's in-court identification was unreliable, he has not demonstrated that his counsel was ineffective in failing to object on such grounds.  Therefore, the trial court's denial of this claim was not an unreasonable application of federal law, and it is recommended that his motion on this ground be DENIED.

*B.  Ineffective Assistance of Counsel in Failing to Object to the Admission of Officer Huggins' Hearsay Testimony*

Thompson argues that his counsel was ineffective in failing to object to Officer Huggins' testimony regarding the information he received by way of the anonymous tip.  The undersigned previously concluded that the admission of Officer Huggins' testimony violated Thompson's rights under the Confrontation Clause, but that such admission was harmless error based on the other evidence indicating Thompson's guilt.  The undersigned notes that defense counsel did in fact object to Officer Huggins' testimony on hearsay grounds, but only to the extent that Officer

16

Huggins might testify as to what Detective Roark from Crime Stoppers specifically told him; he did not appear to contest Officer Huggins' more general testimony that the information he received implicated Thompson. However, even assuming that defense counsel's performance in this regard was deficient, Thompson cannot demonstrate that he suffered any prejudice as a result of such deficiency. Given the evidence presented regarding Guidry's identification of Thompson from the photo line-up, and Guidry's unwavering in-court identification of Thompson, there is no reasonable probability that the result of the trial would have been different had defense counsel objected to the testimony and it been excluded. Therefore, it is recommended that Thompson's motion on this ground be DENIED.

*C. Ineffective Assistance of Counsel in Failing to Object to the Bill of Information on the Ground that it Failed to Set Forth an Essential Element of the Offense Charged*

In his final assignment of error, Thompson argues that his counsel was ineffective in failing object to the bill of information on the ground that it failed to set forth a crucial element of the offense charged. He argues that the amended bill of information charging him with the armed robbery of Guidry did not set forth the item of value that was taken. The bill of information stated as follows:

> THE DISTRICT ATTORNEY FOR THE PARISH OF OUACHITA, STATE OF LOUISIANA, CHARGES THAT THOMPSON, TERRANCE D., IN THE PARISH AND STATE AFORESAID, DID:
>
> * * * *
>
> COUNT 3 -- ARMED ROBBERY -- ON OR ABOUT 12 DEC 2002
>
> WILFULLY AND UNLAWFULLY, WHILE ARMED WITH A DANGEROUS WEAPON, TO-WIT: A HANDGUN, COMMIT ARMED ROBBERY OF PAUL GUIDRY, CONTRARY TO THE PROVISIONS OF

R.S.14:64 & R.S.14:64.3.

[Rec. p. 70].[5]  Thompson argues that the failure of the bill of information to state the item taken rendered it fatally deficient and therefore insufficient to vest the trial court with jurisdiction.  The undersigned finds this argument to be without merit as Thompson has demonstrated neither that his counsel's performance was deficient nor that he has suffered any prejudice.

The Fifth Circuit has held that "[t]he sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the state indictment is so defective that it deprives the state court of jurisdiction."  *Wood v. Quarterman*, 503 .3d 408, 412 (5th Cir. 2007) (citation and internal quotations omitted).  "That question is foreclosed to federal habeas review, however, if 'the sufficiency of the [indictment] was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case.'"  Id. (citations omitted).  Here, Thompson argued that the bill of information was defective in his brief filed with the Louisiana Supreme Court and the court denied writs without explanation.  [Rec. p. 592].

Nevertheless, Thompson fairs no better when this Court considers the merits of his claim. According to Article 465 of the Louisiana Code of Criminal Procedure, armed robbery may be charged by a short form indictment.  LSA-C.Cr.P. Art. 465(42).  The short form indictment for armed robbery reads as follows:  "A.B., while armed with a dangerous weapon, robbed C.D."  *Id.*

---

[5]  The amended bill of information charging Thompson with the armed robbery of Guidry was filed on June 21, 2002, the first day of the trial, due to the fact that the case was consolidated with that of the armed robbery of Johnson.  [Rec. p.74].

Moreover, the Louisiana Supreme Court has repeatedly upheld the constitutionality of the short form indictment for armed robbery. *See State v. Monk*, 315 So. 2d 727, 734 (La. 1975); *State v. Ragsdale*, 187 So. 2d 427, 434-35 (La. 1966). This is based on the fact that when a short form indictment is used, the state is required furnish any additional information sought by the defendant by way of a bill of particulars when such is requested. *State v. Gardner*, 844 So. 2d 1097, 1100 (La.App. 3 Cir. 2003).[6]

The bill of information in this case was actually more detailed that the short form for armed robbery; therefore, there were no grounds for Thompson's attorney to challenge the bill of information. *See State v. Howard*, 149 So. 2d 409, 411 (La. 1963) (citation omitted) (stating that it is permissible for the indictment to state more than the short form requires; "[i]t is not essential for the pleader to literally track the language of the short form; it is enough that the words used 'unmistakably convey the same meaning as those contained in the short form'"). An attorney is not ineffective for failing to raise a meritless argument. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

Moreover, Thompson has not demonstrated that there was any reason for his attorney to file a motion for a bill of particulars. He argues that the only item taken from Guidry was a cell

---

[6] Thompson relies on *State v. Straughan*, 87 So. 2d 523 (La. 1974), in which the Louisiana Supreme Court held unconstitutional a statute that allowed a defendant to be charged by stating only the name and article number of the offense committed and also that the failure of an indictment to set forth all of the essential elements of the offense could be cured by a motion for a bill of particulars. However, *Straughan* has been overruled. *See State v. Russell*, 292 So. 2d 681 (La. 1974); *State v. Gainey*, 276 So. 2d 1240, 1242 (La. 1979) (stating that short form indictments are constitutionally sufficient to inform a defendant of the nature of the charges against him based on the availability of a bill of particulars).

phone that he owned but that was in the possession of Townsend, and notes that although Guidry's wallet was taken from him, it was given back before the robbery was over. Apparently this argument is intended to convey that had defense counsel objected to the indictment he would have been better able to prepare a defense with regard to issue of what items were taken from Guidry.

This argument fails for two reasons. First, there is no indication that defense counsel was unaware of what was taken during the robbery. In fact, during a hearing that took place on the day of trial, counsel stated to the court that he had been provided with discovery regarding the armed robbery of Guidry and that he was ready to proceed to trial on that charge. [Rec. p. 182]. Moreover, the record reveals that defense counsel questioned Guidry and Huggins regarding the fact that the cell phone was taken from Townsend rather than Guidry and the fact that Thompson did not take anything from Guidry's wallet and discarded it before fleeing the scene. [Rec. p. 132-34, 145]. Defense counsel also argued both these points during closing argument. [Rec. p. 418-20].

Second, irrespective of whether the taking of the cell phone constituted an armed robbery of Guidry, as opposed to Townsend, the fact that Thompson possessed the wallet, albeit momentarily, was sufficient to satisfy the taking element of armed robbery. *See State v. Conrad*, 620 So. 2d 366, 369 (La.App. 5 Cir. 1993) (noting that the Louisiana Supreme Court has held that the "slightest asportation . . . deprivation . . . [or] segregation of property moved the slightest distance" is sufficient to satisfy the theft element of armed robbery and, therefore, the fact the victim was able to take her purse back after the perpetrator took it did not change the fact that the

evidence was sufficient to support the armed robbery conviction); *State v. Neal*, 275 So. 2d 765, 770 (La. 1978) (the fact that defendant took victim's wallet but dropped it when the victim fired a gun at him did not render conviction for armed robbery unsupported by the evidence; the fact that the defendant held the wallet prior to fleeing the scene satisfied the taking element of armed robbery).  In this case, Guidry testified that Thompson took his wallet and looked through it but then discarded it after finding no cash in it.  The fact that Thompson took the wallet, although he only had it momentarily, was sufficient to establish the taking element of armed robbery.  Therefore, even assuming that defense counsel was unaware of what was taken during the robbery, Thompson has not alluded to any arguments or evidence that defense counsel could have made that would have potentially changed the outcome of the trial.  Therefore, as Thompson has not demonstrated that his attorney's performance was deficient or that any prejudice resulted from his attorney's actions, the trial court's denial of his claim did not constitute an unreasonable application of federal law.  Accordingly, it is recommended that his motion on this ground be DENIED.

## <u>CONCLUSION</u>

For the reasons stated above, **IT IS RECOMMENDED** that Petitioner's Petition for *Habeas Corpus* pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and Petitioner's Complaint be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **ten**

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 4th day of February, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE